**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GRETA BELSLY AND GEORGIA MATT | ) |
| Plaintiffs, | ) <br> ) FILED: JULY 22, 2008 <br> ) Case No. |
| v. | ) <br> )    08CV4170 <br> )    JUDGE ANDERSEN |
| FUNMOBILE GAMES, INC. and FUNMOBILE, LTD. | ) Hon. MAGISTRATE   BROWN <br> )    NF |
| Defendants | ) <br> ) |

## NOTICE OF REMOVAL

Pursuant to the Class Action Fairness Act ("CAFA") 28 U.S.C. §§ 1332, 1453,

Defendants FUNMOBILE GAMES, INC. and FUNMOBILE, LTD (collectively, "Defendants")

hereby remove this action, pending as Case No. 08 CH 22604 in the Circuit Court of Cook

County, Illinois, County Department, Chancery Division, to the United States District Court for

the Northern District of Illinois.

This Notice advances arguments regarding removal under CAFA only, as is appropriate

at this very early point in the litigation. Nonetheless, Defendants strongly dispute the accuracy

of the allegations in the complaint. Class counsel has recycled allegations they previously made

against other mobile content providers, aggregators, and wireless carriers,[1] apparently without

undertaking even the most cursory investigation to determine that these generic allegations are

---

[1] *See, e.g., Fiddler v. AT&T Mobility, LLC, M-Qube, Inc., and Verisign, Inc.,* No. 07-CH-37212 (Ill. Cir. Ct.).

accurate with regard to Defendants.  Defendants will rebut these allegations at the appropriate

stage in the appropriate forum, which they believe to be the U.S. District Court for the Northern

District of Illinois.  As grounds for removal, Defendants state as follows:

## SUMMARY OF COMPLAINT AND BASIS FOR FEDERAL JURISDICTION

1.      This action arises out of allegedly unauthorized charges on the Plaintiffs' cellular

telephone bills for the Defendants' products and services.  Specifically, Plaintiffs, on behalf of a

putative nationwide class, allege that Defendants' practice of charging customers for mobile

content (such as ringtones), ostensibly without sufficiently authenticating the customer's consent

to these charges, is a "deliberate and willful scheme to cheat large numbers of people out of

small amounts of money." Compl. ¶ 22.  As a result, Plaintiffs have asserted claims for

restitution and unjust enrichment; tortious interference with contract; and violation of

unspecified consumer fraud provisions.  Plaintiffs seek monetary damages, costs and attorneys'

fees, pre- and post-judgment interest, and injunctive and declaratory relief.

2.      Named plaintiffs Greta Belsly and Georgia Matt have brought this complaint on

behalf of a nationwide class consisting of "all wireless telephone subscribers in the nation who

suffered losses or damages as a result of Funmobile billing for mobile content products and

services not authorized by the subscriber[.]" (Compl. ¶ 42.)

3.      This Court has jurisdiction over this action pursuant to CAFA.  CAFA grants

federal courts jurisdiction over class actions where there is:  (a) minimal diversity; (b) 100 or

more class members; and (c) the aggregate amount in controversy exceeds $5 million. *See* 28

U.S. C. §§ 1332(d)(2)(A), 1332(d)(2)(C), 1332(d)(5)(B), 1332(d)(6).  As discussed in greater

detail below, Defendants meet each of the requirements for removal. *First,* diversity of

citizenship exists because defendant Funmobile Ltd. is a Hong Kong corporation. In addition, there is no common citizenship between defendant Funmobile Games, Inc., a Delaware corporation, and the named Plaintiffs, who are citizens of Illinois and Montana. *Second*, this putative nationwide class undoubtedly exceeds the 100 member minimum, given the size of the U.S. customer base of companies within the Funmobile group (collectively, "Funmobile") and Plaintiffs' allegations that Defendants have "registered numerous transactions" and "frequently charges" their U.S. customers for unauthorized services, causing "many" customers to dispute charges for mobile content. Compl. ¶¶18, 20, 22. As plaintiffs note, the provision of mobile content to cell phone users is a "burgeoning industry," involving a "vast distribution system" through which mobile content is provided via "some of the largest wireless carriers nationwide." Compl. ¶¶ 8, 15. *Finally*, the amount in controversy requirement is satisfied, given the amount of revenue that the Funmobile companies earn from the provision of mobile content to U.S. customers and Plaintiffs' claims that this revenue is derived from Defendants "systematically, repeatedly and without authorization," not to mention "routinely" and "frequently," billing customers for unauthorized charges. Compl. ¶¶ 19-21.

4.     The Circuit Court of Cook County, Illinois is located within the United States District Court for the Northern District of Illinois. Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §1441(a).

5.     By removing this action to this Court, Defendants do not waive any defenses, objections, or motions available to them under state or federal law. Defendants expressly reserve the right to assert that personal jurisdiction is lacking and/or that Plaintiff's claims and the claims of the putative class must be decided on an individual basis through arbitration.

## STATE COURT FILINGS

6.      On June 23, 2008, Plaintiffs commenced the instant action by filing a Complaint in the Circuit Court of Cook County, Illinois.  A true and correct copy of the complaint with summons is attached hereto as Exhibit A.  The action was designated as Case No. 08 CH 22604.

7.      To Defendants' knowledge, Exhibit A is the only document in the state court file.

## TIMELY REMOVAL

8.      This Notice of Removal is timely pursuant to 28 U.S.C. §§ 1446(b) and 1453(b) because it is "filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

## NOTICE OF REMOVAL

9.      Pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Circuit Court for the Circuit Court of Cook County, Illinois, and Plaintiff's counsel is being duly served with written notice of the removal.

## THIS COURT HAS ORIGINAL JURISDICTION UNDER 28 U.S.C. § 1332(d)(2)

10.     This Court has original jurisdiction over this action pursuant to CAFA, 28 U.S.C. §§ 1332, 1453, which grants federal courts original jurisdiction over actions where there is minimal diversity, 100 or more class members, and the aggregate amount in controversy exceeds $5 million.  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005).  Under 28 U.S.C. §§ 1446 and 1453(b), Defendants can remove this action to this Court.

**Diversity Of Citizenship**

11.    Plaintiffs represent that Greta Belsly is a citizen of Illinois and Georgia Matt is a citizen of Montana.  Compl. ¶ 1.

12.    Defendant Funmobile Games, Inc. is a Delaware corporation.  It has no offices within Illinois or Montana.  *See* Affidavit of Ed Yip ("Yip Affidavit"), ¶ 6 (attached as Exhibit B).

13.    Defendant Funmobile, Ltd. is a limited company incorporated in Hong Kong.  It has no offices within the United States.  *Id.*, ¶ 7.

14.    Under 28 U.S.C. § 1332 (d)(2)(C), diversity is satisfied where any defendant is a foreign state or a citizen or subject of a foreign state.  Defendant Funmobile, Ltd. is a citizen of a foreign state, Hong Kong.  Accordingly, diversity of citizenship exists between plaintiffs and Funmobile, Ltd.  In addition, diversity of citizenship exists between Funmobile Games, Inc. and the named plaintiffs.  *See* 28 U.S.C. § 1332 (d)(2)(A).

**Class Action Consisting of More Than 100 Members**

15.    Plaintiffs represent a putative class defined as "all wireless telephone subscribers in the nation who suffered losses or damages as a result of Funmobile billing for mobile content products and services not authorized by the subscriber[.]"  Compl. ¶ 42.

16.    The United States is currently Funmobile's largest market.  As of May 2008, Funmobile had approximately 817,000 customers in the United States.  Since Funmobile first entered the United States in the first quarter of 2006 until December 31, 2007, roughly 2,909,000 cell phone users have become a customer of Funmobile in the United States.  *See* Yip Affidavit, ¶ 3.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this response was filed electronically on this 22nd day of July, 2008. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I also certify that a copy of this motion has been served by depositing a copy of it in the United States mail, first class postage prepaid.

Jay Edelson
Myles McGuire
Steve Lezell
KAMBEREDELSON, LLC
53 W. Jackson Blvd., Ste. 550
Chicago, IL 60604

<u>/s/ Nicole Auerbach</u>
Nicole Auerbach
VALOREM LAW GROUP LLC
35 E. Wacker Drive, Ste. 2900
Chicago, IL 60601
312-676-5469
nicole.auerbach@valoremlaw.com

08CV4170
JUDGE ANDERSEN
MAGISTRATE JUDGE BROWN
NF

# EXHIBIT A

| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

(Name all parties)

Belsly, Greta and Matt, Georgia

v.

Funmobile Games, Inc. and Funmobile, Ltd.

*3500 s Depart Door*

No. 08CH22604

## SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 502, Chicago, Illinois 60602

| ☐ District 2 - Skokie | ☐ District 3 - Rolling Meadows | ☐ District 4 - Maywood |
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ☐ District 5 - Bridgeview | ☐ District 6 - Markham | ☐ Child Support |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | 28 North Clark St., Room 200 |
| Bridgeview, IL 60455 | Markham, IL 60426 | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 44146

Name: Myles McGuire

Atty. for: Plaintiffs

Address: 53 West Jackson Blvd., Ste. 550

City/State/Zip: Chicago, Illinois 60604

Telephone: 312.589.6370

Service by Facsimile Transmission will be accepted at: _____

WITNESS, JUN 23 2008

Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code)   (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS



**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

GRETA BELSLY AND GEORGIA MATT,   )
individually and on behalf of a class of similarly   )
situated individuals,   )
   )
            Plaintiffs,   )    No. 08CH22604
   )
       v.   )
   )
FUNMOBILE GAMES, INC., a Delaware   )
Corporation, and FUNMOBILE, LTD., a Hong   )
Kong corporation,   )
   )
            Defendants.   )    **Jury Trial Demanded**
--------------------------------------------------------------x

## CLASS ACTION COMPLAINT

Plaintiffs Georgia Matt and Greta Belsly bring this class action complaint against Defendants Funmobile Games, Inc. and Funmobile, Ltd. (collectively, "Funmobile") seeking to stop Defendants' unlawful practice of charging cellular telephone customers for products and services the customers have not authorized, a practice which has resulted in Defendants unlawfully collecting money from consumers throughout the nation, and to obtain redress for all persons injured by their conduct. Plaintiffs, for their class action complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### PARTIES

1.    Plaintiff Greta Belsly is a citizen of Illinois and Plaintiff Georgia Matt is a citizen of Montana.

2.    Defendant Funmobile Games, Inc. is a provider of mobile content in the United States. It is a Delaware corporation. It does business throughout the nation. Defendant

1

Funmobile, Ltd. is a Hong Kong corporation that does business throughout the United States, including this county.

VENUE

3.      Venue is proper in Cook County because Defendants do business in Cook County.

CONDUCT COMPLAINED OF

4.      This case arises from two closely related phenomena. The first is the capability of most cellular telephones, not only to make and receive telephone calls, but also to send and receive text messages, including -- most significantly for present purposes -- "premium" text message services. These services, also known as "mobile content" include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio, and participatory television).

5.      The second underlying phenomenon of this case constitutes its very core. That is, just as providers of premium mobile content, such as Defendants, deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by the wireless carriers. Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they do so with the help of third-party companies, such as m-Qube, known as aggregators. These aggregators act as middle-men, representing numerous mobile content providers in arriving at the agreements that allow them to use the billing and collection mechanisms of the wireless carriers. In turn, both the aggregators and the wireless carriers are compensated for their services to the mobile content providers by

2

retaining a substantial percentage of the amount received from each premium mobile content transaction.

6.      The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw -- understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content providers such as the instant Defendants -- is an open secret within the industry, but little understood outside of it. In short, the billing and collection systems established by companies including Defendants in aid of and enriching the premium mobile content industry are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

7.      As Defendants also know, significant amounts of money have been collected on account of such unauthorized charges for premium mobile content in the industry over the last few years. And while it has always been within the power of companies such as Defendants to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed, Defendants have reaped and retained their shares of the improper collections.

8.      While the total sales of premium mobile content in 2007 amount to a significant sum, the business is still in its infancy. The burgeoning industry has already expanded from ordinary ringtones into mass media-related products such as interactive radio and participatory voting at television and concert events and, most recently, into services that enable cell phones to function as credit cards. Unchecked, Defendants' practices will injure an ever-increasing number of unwitting consumers.

3

9.      Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile content provider needs to charge a consumer for their products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

10.     Armed with only a cell phone number, mobile content providers such as Defendants can simply provide that number, along with an amount to be charged, to a billing aggregator. The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

11.     Because the protections normally present in consumer transactions – such as signatures and private credit card numbers – are absent from this process, the likelihood of false charges increases enormously.  And, because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude.  Mobile content providers have powerful financial incentives to collect as many cell phone numbers as possible but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

12.     In order to tap into the emerging wireless content marketplace and make content services available to wireless consumers, content providers must first obtain access to wireless carriers' mobile communications networks and frequently do so by "partnering" with aggregators -- intermediary companies that offer content providers (their "content provider

4

partners") direct access to the carriers through existing relationships. This allows content

providers to focus on developing and marketing branded content, applications, and programs

while aggregators manage the complex carrier relationships, distribution, billing, and customer

service.

      13.    Aggregators operate mobile transaction networks that help companies develop,

deliver, and bill for mobile content services to compatible mobile devices throughout the State of

Illinois and the nation.

      14.    By using their end-to-end technology platforms, their relationships with U.S.

carriers, and other value-added services, these aggregators have forged a crucial link between the

wireless carriers and the mobile content providers. They have enabled the transformation of the

wireless industry into a marketing, content delivery, and collections process, while carving out a

profitable role for themselves as very critical middlemen in this rapidly growing industry.

      15.    Aggregators have developed a vast distribution system that integrates into the

wireless networks of some of the largest wireless carriers nationwide, providing direct

connections to more than 500 mobile operators.

      16.    While aggregators charge their content provider customers some upfront fees,

their revenue is primarily generated through a "revenue share" on transactions for which they bill

cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile

content services offered by a content provider, the aggregator and/or the content provider cause

said charge to be billed directly on the cellular telephone bill of the carrier's customer who

currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

      17.    The carrier then bills and collects the charge from their current subscriber, retains

about a portion of the proceeds as their "revenue share," and then remits the balance to the

aggregator who has direct access to their network and who retains a percentage of the balance in the form of their own "revenue share," and then remits the remainder directly to the mobile content provider (or, in some instances, to another aggregator who then retains a percentage of the balance in the form of their own "revenue share" and then remits the balance to their mobile content provider client).

18.     Defendants have registered numerous transactions and processed significant amounts of money in transactions in the United States over recent years and have profited greatly from their arrangement with their aggregator partners and carrier partners.

19.     As it also knows, Funmobile routinely processes charges for mobile content that have not been authorized by the charged party.

20.     As explained above, unbeknownst to their customers, Funmobile frequently charges consumers for services that were never authorized.

21.     As a result, Funmobile has for years been systematically, repeatedly and without authorization, billing their customers for purchase of products and services not agreed to by those customers.  Funmobile and third-party service providers have, on information and belief, profited significantly through this practice.

22.     Funmobile's conduct is by no means accidental. As previously alleged, it knows that many of its cellular telephone customers dispute the mobile content provider's claim that such customer consented to be charged for its mobile content services. Funmobile further knows that it cannot authenticate such customer's authority to be billed for such mobile content charges. In light of its knowledge of these facts, Funmobile's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content

6

providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

23.     Because the amount Funmobile is taking is small on an individual basis – as little as a few dollars to at most several hundreds of dollars per person – Defendants employ this scheme with the hope and expectation that their illegal conduct will go unpunished.

## THE FACTS RELATING TO THE NAMED PLAINTIFF BELSLY

24.     In or before 2006, new cell phone service was purchased by Plaintiff and/or her family from an authorized sales representative of an established wireless carrier.

25.     On that same day, in exchange for a cellular telephone service plan, Plaintiff agreed to pay a set monthly fee for a period of approximately 12 months.

26.     Upon activating her cellular telephone account, Plaintiff was provided with a unique account number.

27.     In or about 2008, Plaintiff's cell phone account was charged for unwanted mobile content services by or on behalf of Defendants.

28.     At no time did Plaintiff authorize the purchase of these products and services offered by Defendants.

29.     During the relevant time period, Defendants caused Plaintiff to be charged service fees for so-called third-party mobile content.

30.     At no time did Plaintiff authorize Defendants or anyone else to bill her for these charges.

31.     Defendants have yet to provide Plaintiff a full refund of the unauthorized charges consisting of the premium text message charges, ordinary text messages, data charges, back

7

interest, and/or an assurance that such unauthorized charges would not appear in future billing periods.

## THE FACTS RELATING TO THE NAMED PLAINTIFF MATT

32.    In or about 2006, new cell phone service was purchased by Plaintiff and/or her family from an authorized sales representative of an established wireless carrier.

33.    On that same day, in exchange for a cellular telephone service plan, Plaintiff agreed to pay a set monthly fee for a period of approximately 12 months.

34.    Upon activating her cellular telephone account, Plaintiff was provided with a unique account number.

35.    In or about 2007, Plaintiff's cell phone account was charged for unwanted mobile content services by or on behalf of Defendants.

36.    At no time did Plaintiff authorize the purchase of these products and services offered by Defendants.

37.    During the relevant time period, Defendants caused Plaintiff to be charged service fees for so-called third-party mobile content.

38.    At no time did Plaintiff authorize Defendants or anyone else to bill her for these charges.

39.    Defendants have yet to provide Plaintiff a full refund of the unauthorized charges consisting of the premium text message charges, ordinary text messages, data charges, back interest, and/or an assurance that such unauthorized charges would not appear in future billing periods.

8

## AMOUNT IN CONTROVERSY

40.    Plaintiffs make no specific allegation that the amount in controversy (including requests for attorneys' fees, injunctive relief, etc.) exceeds any specific amount, let alone $5,000,000.

41.    Further, Plaintiff is not seeking a refund of all mobile content charges, but rather only those that were unauthorized.

## CLASS ALLEGATIONS

42.    Plaintiffs brings this action on behalf of herself and a Class, defined as follows:

A class ("the Class") consisting of all wireless telephone subscribers in the nation who suffered losses or damages as a result of Funmobile billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the Defendants, and (ii) any employee of Defendants.

43.    The claims of Plaintiffs are typical of the claims of all of the other members of the Class.

44.    Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

45.    Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal

9

litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

46. Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

47. The factual and legal bases of Defendants' liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to Plaintiffs and to all of the other members of the Class. Plaintiffs and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

48. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

(a) Whether Funmobile's conduct described herein is unjust enrichment.

(b) Whether Funmobile's conduct described herein is tortuous interference with a contract.

(b) Whether Funmobile's conduct described herein is consumer fraud.

**COUNT I**
**(Restitution/Unjust Enrichment on behalf of the Class)**

49. Plaintiffs incorporate by reference the foregoing allegations.

50. A benefit has been conferred upon Funmobile by Plaintiffs and the Class. Funmobile has received and retained money belonging to Plaintiffs and the Class resulting from its billing and collecting unauthorized third party mobile content charges.

10

51.    Funmobile appreciates or has knowledge of said benefit.

52.    Under principles of equity and good conscience, Funmobile should not be permitted to retain the money belonging to Plaintiffs and the Class which Funmobile has unjustly received as a result of its actions.

## COUNT II
### (Tortious Interference with a Contract on behalf of the Class)

53.    Plaintiffs incorporate by reference the foregoing allegations.

54.    Plaintiffs and the Class had contractual relationships with their wireless carriers whereby they agreed to pay a certain sum of money in exchange for activation of their cellular telephone accounts and their carriers' promise to provide various communication and related services to Plaintiffs and the Class and to bill Plaintiffs and the Class only for products or services the purchase of which they had authorized.

55.    Funmobile knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

56.    Funmobile intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing unauthorized charges to be placed on the cellular telephone bills of cellular telephone owners across the nation.

57.    Plaintiffs and the Class suffered loss as a direct result of Funmobile's conduct.

## COUNT III
### (Violation of Consumer Fraud on Behalf of the Class)

58.    Plaintiffs incorporate by reference the foregoing allegations.

59.    Consumer fraud provisions involve methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception,

11

fraud, false pretense, false promise, misrepresentation or the concealment, suppression or
omission of such material fact in the conduct of any trade or commerce whether any person has
in fact been misled, deceived or damaged thereby.

60.    Defendants violated, and continue to violate such proscriptions through its
conduct alleged above.

61.    Defendants, through its acts of unfair competition, have obtained money from
Plaintiffs and members of the proposed Class.  Plaintiffs and the members of the Class ask that
this Court restore this money to Plaintiffs and enjoin Defendants from continuing their illegal
practices.

62.    Such conduct is ongoing and continues to this date.  Plaintiffs, the Class members
and the general public are therefore entitled to the relief described herein.

WHEREFORE, Plaintiffs Greta Belsly and Georgia Matt, on behalf of themselves and
the Class, pray for the following relief:

a.    Certify this case as a class action on behalf of the Class as defined above
and appoint Greta Belsly and Georgia Matt Class Representatives, and
appoint the undersigned as lead counsel;

b.    Declare the actions of Funmobile, as set out above, constitute unjust
enrichment and tortuous interference with a contract;

c.    Enter judgment against Funmobile for all economic, monetary, actual,
consequential, and compensatory damages caused by its conduct;

d.    Award Plaintiffs and the Class reasonable costs and attorneys' fees;

e.    Award Plaintiffs and the Class pre- and post-judgment interest;

f.    Enter judgment for injunctive, statutory, and/or declaratory relief as is
necessary to protect the interests of Plaintiffs and the Class;

g.    Declare that the actions of Defendants, as set forth above, as well as in
other respects, constitute consumer fraud; and

12

h.     Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

June 23, 2008

> Greta Belsly and Georgia Matt, individually and on
> behalf of a class of similarly situated individuals
>
> _____
> One of their attorneys

Jay Edelson
Myles McGuire
Steve Lezell
KAMBEREDELSON, LLC
53 West Jackson Blvd.
Suite 550
Chicago, Illinois 60604
Telephone: (312) 589-6370
Firm ID: 44146

```
08CV4170
JUDGE ANDERSEN
MAGISTRATE JUDGE BROWN
NF
```

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GRETA BELSLY AND GEORGIA MATT | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Hon. |
| FUNMOBILE GAMES, INC. and FUNMOBILE, LTD. | ) | |
| | ) | |
| Defendants | ) | |

### AFFIDAVIT OF ED YIP

1.  My name is Ed Yip.  I am the Business Development Manager of Funmobile Games, Inc. and Funmobile, Ltd.  I have personal knowledge of each matter stated in this affidavit.

2.  Companies within Funmobile Group ("Funmobile") provide mobile content, such as cell phone ringtones and or text alerts, on a subscription basis to customers in twenty countries.  Funmobile expanded into the U.S. market on January 1, 2006.

3.  The United States is currently Funmobile's largest market.  As of May 2008, Funmobile had approximately 817,000 customers in the U.S.  Since Funmobile first entered the U.S. market during the first quarter of 2006 until December 31, 2007, it has provided mobile content to roughly 2,909,000 customers in the U.S.

4.  During 2006, Funmobile had approximately $33.9 million in total gross revenue from selling mobile content to U.S. customers.  During 2007, Funmobile had approximately $51.5 million in total gross revenue from selling mobile content to its U.S. customers.

5.  This revenue amount listed above is derived solely from subscription plans. In the United States, the price for subscription plans varies depending on the customer's cellular service provider. As of July 2008, the monthly price of a ringtone/wallpaper/theme subscription plan in the United States ranges between $4.99 to $9.99, with an average cost of $9.43 per month. As of July 2008, the weekly price for a joke of the day or horoscope plan is 5.99 and the monthly price for a joke of the day or horoscope plan is between $4.99 and $9.99 with an average subscription cost of $9.32.

6.  Funmobile Games, Inc. is a Delaware corporation. It has an office in Boston, MA. It does not have an office in Illinois or Montana.

7.  Funmobile, Ltd. is a Hong Kong Limited Company. Funmobile, Ltd. does not have any offices within the United States.

8.  Neither Funmobile Games, Inc. nor Funmobile, Ltd. has ever had any U.S.-based revenue.

9.  Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 21, 2008

_____
Ed Yip