UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRETA BELSLY and GEORGIA MATT, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> FUNMOBILE GAMES, INC., and FUNMOBILE LTD., <br><br> Defendants. | ) ) ) ) No. 08-cv-4170 ) ) ) Judge Wayne Anderson ) ) ) ) ) ) ) |

**NOTICE OF MOTION**

TO:   Nicole N. Auerbach
      Valorem Law Group LLC
      35 E. Wacker Drive, 29th Floor
      Chicago, Illinois 60601
      Email:  nicole.auerbach@valoremlaw.com

   On August 21, 2008, at 9:00 a.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Wayne Anderson or any Judge sitting in his stead, in the courtroom usually occupied by him, located in Courtroom 1403 at the United States District Court, Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, 60604 and present Plaintiffs' Motion to Remand, a copy of which is hereby served upon you.

| | |
|---|---|
| Myles McGuire, Attorney for Plaintiff | (312) 589-6370 |
| KamberEdelson, LLC | (312) 873-4610 (Fax) |
| 53 West Jackson Boulevard, Suite 550 | mmcguire@kamberedelson.com |
| Chicago, Illinois 60604 | |

**CERTIFICATE OF SERVICE**

    Myles McGuire, an attorney, hereby certifies that he served Plaintiffs' Motion to Remand upon the person(s) to whom the preceding Notice of Motion is addressed by electronic transmission before 5:00 p.m. on August 14, 2008.

                                                        By: /s/ Myles McGuire
                                                            Myles McGuire

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRETA BELSLY AND GEORGIA MATT, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>FUNMOBILE GAMES, INC. and FUNMOBILE, LTD.,<br><br>Defendants. | Case No. 08 CV 4170<br><br>Hon. Judge Anderson<br><br>Magistrate Judge Brown |

## PLAINTIFFS' MOTION FOR REMAND

Plaintiffs, through their counsel, respectfully move this Court to remand Defendants' Funmobile Games, Inc. and Funmobile, Ltd (collectively "Funmobile") removal of Plaintiffs' complaint and, in support thereof, state the following:

1.　Pursuant to the provisions of 28 U.S.C. § 1447(c), Plaintiffs move to have this case remanded to the Circuit Court of Cook County, Illinois. Defendants' removal of this case to this Court was improper and contrary to well-established law. This Court lacks subject-matter jurisdiction over the case and should accordingly be remanded with attorney's fees awarded to Plaintiffs.

2.　Defendants shoulder the burden of demonstrating, by a preponderance of the evidence, that removal is proper. As explained in the contemporaneously-filed Memorandum in Support of Plaintiffs' Motion to Remand, Funmobile has failed to sustain that burden. Among other reasons, Funmobile has fallen far short of showing that the amount in controversy exceeds $5 million as is required for CAFA removal.

3.　Plaintiff incorporates herein by reference his Memorandum in Support of Plaintiff's Motion to Remand.

1

2

WHEREFORE, Plaintiffs respectfully request this Honorable Court remand this action to the Circuit Court of Cook County, award fees to the Plaintiffs incurred in bringing this motion, and for such additional relief as this Court deems necessary and just.

Dated: August 14, 2008

                        Respectfully submitted,

                        /s/ Myles McGuire
                        Myles McGuire
                        One of the attorneys for Plaintiffs
                        individually and on behalf of a class of
                        similarly situated individuals

JAY EDELSON
MYLES MCGUIRE
STEVEN LEZELL
KAMBEREDELSON, LLC
53 West Jackson, Suite 550
Chicago, Illinois 60604
(312) 589-6370
Firm I.D. 44146

2

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRETA BELSLY AND GEORGIA MATT, on behalf of themselves and all others similarly situated <br><br> Plaintiffs, <br><br> v. <br><br> FUNMOBILE GAMES, INC. and FUNMOBILE, LTD., <br><br> Defendants. | Case No. 08 CV 4170 <br><br> Hon. Judge Anderson <br><br> Magistrate Judge Brown |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR REMAND**

Relying solely on approximations of gross revenue from 2006 and 2007, Defendants Funmobile Games, Inc. and Funmobile, Ltd. ("Funmobile") erroneously assert they have shown $5 million at issue for this Court to exercise jurisdiction over this case under the Class Action Fairness Act ("CAFA") 28 U.S.C. §§ 1332, 1453. Because federal law requires Funmobile to demonstrate the amount in controversy exceeds $5 million by a preponderance of evidence, Funmobile's dearth of evidence requires this Court to remand this matter to the Circuit Court of Cook County. In support, the Plaintiffs state as follows:

**BACKGROUND FACTS**

This case concerns Funmobile's alleged profiteering from "cramming"—the process by which providers of premium mobile content collect money from cell-phone customers for services the customers never actually ordered. (Compl. ¶¶ 4-23.) Cell phones and other mobile devices have the capacity to display premium mobile content (ringtones, games, stock tips, jokes,

daily horoscopes etc.) (Compl. ¶ 4.)  Cell phone users purchase such mobile content services on internet websites, through short code promotions, and by other means.[1]

Mobile content providers such as Funmobile charge their customers subscription fees that ultimately appear as line-items on the customers' cell phone bills.  (Compl. ¶ 5.)  To effectuate such purchases, Funmobile sends the telephone number and charge to a billing aggregator who has relationships with the wireless carriers.  (Compl. ¶ 5.)  Armed with the wireless phone number and the charge, the billing aggregator can place the cryptic line-item on the customer's wireless telephone bill.  (Compl. ¶¶ 5, 10.)  Mobile phone customers then pay their wireless carriers directly, who keep a portion of the proceeds before remitting the remainder to the aggregator, who in turn keeps its share before sending the mobile content provider percentage of the proceeds.  (Compl. ¶¶ 16-18.)

Given the absence of verification procedures, there are a myriad of ways a mobile content charge may be wrongfully placed on a cell phone bill.  (Compl. ¶ 6.)  The reasons range from innocent inadvertence (the customer mistakenly enters the wrong phone number on a website or the mobile content provider sends the wrong phone number to the aggregator for billing), to deception (misleading terms induce purchases of subscriptions with recurring charges when the customer thought she was buying a single ringtone), to outright fraud (a content provider intentionally sends false information to the aggregator to sign up multiple customers without the

---

[1] For example, Customer A visits a website operated by a mobile content provider that sells ringtones for $1 each.  Customer A enters her wireless telephone number into a field on the website, and the desired ringtone is sent to her wireless device.  The mobile content provider then sends Customer A's telephone number and the corresponding charge information to a billing aggregator (a middleman of sorts who has relationships with major wireless carriers such as AT&T, Sprint and T-Mobile).  The aggregator, in turn, instructs Customer A's wireless carrier to place the charge on Customer A's cell phone bill.  Critically, no mechanism adequately verifies that the person ordering the services is actually Customer A, or someone authorized to make such purchases on Customer A's behalf.

customers' authorization knowing the aggregator does not verify the purchase). (Compl. ¶¶ 9-10.)  In each case, the absence of verification allows these companies to pocket monies for services customers never actually ordered.  (Compl. ¶¶ 9-10.)  Here, Plaintiffs Belsly and Matt allege that they were billed for mobile content services by Funmobile that they never authorized.  (Compl. ¶¶ 24-39.)

On July 22, 2008, Funmobile filed a "Notice of Removal" arguing that this Court could exercise jurisdiction over this case under CAFA.  Plaintiffs concede that Funmobile has shown minimal diversity and that the lawsuit concerns over 100 persons.  Funmobile has failed to demonstrate by a preponderance of the evidence, however, that this matter satisfies CAFA's requirement that $5 million be at issue.  Accordingly, this case should be remanded to the Circuit Court of Cook County.

## ARGUMENT

Federal courts are courts of limited jurisdiction.  *Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 678 (7th Cir. 2006); *see also Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 447-48 (7th Cir. 2000) (federal courts are obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction ) (relying on *Mt. Healthy City Board of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)).  As a result, removal statutes ought to be construed narrowly.  *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000); *see also Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) (courts should "presume that the plaintiff may choose his or her forum").

The burden of proving jurisdiction rests with the party seeking removal.  *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006), *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (removing party required to prove burden by preponderance of

3

evidence); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("If [the removing defendant's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof"); *see also Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 682 (7th Cir. 2006) (removing party "must present *evidence* of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt.") (*quoting In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir.1997)).

A.   **The evidence presented in the affidavit of Ed Yip actually shows that the instant Defendants had no mobile content revenue from U.S. customers.**

Funmobile shoulders the burden of proving $5 million at issue by a preponderance of the evidence. This it has failed to do. Funmobile's evidence of the amount at issue consists entirely of the affidavit of Ed Yip, Funmobile's Business Development Manager. Yip testifies that "Neither Funmobile Games, Inc. nor Funmobile, Ltd. has ever had any U.S.-based revenue." (Yip Aff. ¶8.) Rather, some unknown and undisclosed entities, which Yip cryptically identifies as being "companies within Funmobile Group" provide mobile content to the U.S. market. (Yip Aff. ¶2.) Hence, by Yip's own testimony the amount in controversy between the named parties to this litigation is $0.00. Perhaps Funmobile is merely trying to signal to the Court that it uses some other, as yet unnamed, subsidiary to funnel its ill-gotten gains out of the U.S. market and that Plaintiffs have named the wrong party.[2] In either case, Funmobile cannot have it both ways by arguing simultaneously that the wrong party is named but that the amount in controversy

---

[2] Despite several requests by Plaintiffs' counsel to Funmobile's attorneys for the identity of the Group member that actually generated revenue in the U.S. market, Funmobile has failed to provide such information. Incidentally, on August 14, 2008, the attorney general of the State of Florida announced it had reached an "Assurance of Voluntary Compliance" concerning unauthorized mobile content charges with an entity called "Mobilefunster Inc. d/b/a Funmobile." Plaintiffs' counsel intends to investigate this matter further.

between the named parties still exceeds $5 million.  Either the amount in controversy is $0.00 or the instant parties are properly named in the litigation.  In any case, assuming *arguendo* that the named parties enjoyed some revenue so as to allow Funmoible to claim $5 million is at stake, Funmobile has still failed to meet its burden by a preponderance of evidence.

**B.      Funmobile fails to meet its burden because no evidence is advanced showing what percentage of total revenue is obtained through unauthorized charges.**

Yip testifies that the undefined "Funmobile Group" (the "Group") had approximately $33.9 million in total gross revenue from selling mobile content to U.S. customers in 2006.  (Yip Aff. ¶4.)  By 2007, revenue climbed to approximately $51.5 million.  (Yip Aff. ¶4.)  The Group had approximately 2,909,000 U.S. customers as of December 2007.  (Yip Aff. ¶3.)

There is no doubt that some entity has generated vast sums of money from the sale of Funmobile mobile content to U.S. customers.  Nevertheless, at no point whatsoever does Funmobile suggest what percentage of its revenue, if any, is attributable to *unauthorized* mobile content.  It is important to recall that only unauthorized charges are at issue, not Funmobile's (let alone the Group's) entire revenue stream.  To meet its burden for 2006 and 2007 ($85.4 million total revenue), Funmobile needed to present evidence showing that a reasonable estimate of the percentage of unauthorized charges was around 5.9% ($5 million/$85.4 million = .0585).  Funmobile presents no such proof.

In a sense, then, Funmobile asks this Court to assume "on faith" that a significant percentage of the Group's total revenue is earned illegally (and then further ignore that Funmobile and the Group are different).  This is not enough.  *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007) (removing party is not allowed to rely on "speculation and conjecture").  Unless and until Funmobile is willing to go on record that it is reasonable to presume nearly 6 cents of every dollar it earns it acquires illegitimately, Funmobile has failed to

meet its burden of proof on this issue.  Other courts considering similar claims have rejected CAFA jurisdiction based on testimony of broad revenue figures.  *See Fiddler v. AT&T Mobility, LLC*, No. 08-416, 2008 WL 2130436 (N.D. Ill. May 20, 2008); *Paluzzi v. Cellco P'ship*, No. 08 C 0405 (N.D. Ill. Apr. 29, 2008), *petition for leave to appeal denied*; *Gray v. Cellco P'ship*, No. 08-60146 (S.D. Fla. March 26, 2008).[3]

Either mindful of the public relations implications of meeting this requirement or simply lacking in actual evidence, Funmobile attempts to sidestep the issue by pointing to allegations in the complaint characterizing the prevalence of Funmobile's unauthorized charges as "systematic[], repeated[]," "routine[]" and "frequent", involving "many" customers in a "burgeoning industry." (Not. of Removal, 3.)  These inexact terms do nothing to relieve Funmobile of its burden of providing evidence.  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (conclusory allegations are insufficient to support jurisdiction); *Gaus v. Miles Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).  On their face these allegations merely describe a potentially large problem caused by the lack of verification mechanisms.  Only Funmobile, however, can say with a scintilla of certainty whether "large" in this context means it has illegitimately charged customers $5 million as opposed to some lower (albeit horrific) $4.9 million.  Its silence in this respect forecloses federal jurisdiction.  Consequently, Funmobile has failed to show by a preponderance of the evidence that the amount in controversy meets CAFA's $5 million threshold.

---

[3] In the interest of full disclosure, on July 11, 2008 Judge Moran denied a Motion for Remand in the case of *Panter v. Alltel Corporation*, 1:08-cv-2097 finding Alltel's showing of gross revenue was enough to satisfy CAFA's $5 million threshold.  The *Panter* decision was silent with respect to the reasoning adopted by the courts in *Fiddler*, *Paluzzi* and *Gray*.  Plaintiffs in that matter have since challenged Judge Moran's decision in a Petition for Permission to Appeal to the Seventh Circuit.

**C.  Funmobile's failure to present an objectively reasonable basis for removal warrants an award of reasonable attorneys fees to Plaintiffs' counsel for the presentment and prosecution of this Motion for Remand.**

Funmobile's only evidence flatly states that none of the named parties had any U.S.-based revenue. (Yip Aff. ¶8.) Yet, Funmobile somehow makes the claim that $5 million is at issue. Funmobile's game-play with respect to naming the proper parties suggests little more than an attempt to delay these proceedings and force Plaintiffs' counsel to draft unnecessary motions. Since Funmobile presented no reasonable basis for removal, this Court should award Plaintiffs reasonable attorneys fees incurred for having to prosecute this motion. *See Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir.2007). Therefore, this case ought to be remanded to the Circuit Court of Cook County with reasonable fees awarded to the Plaintiffs.

WHEREFORE the Plaintiffs respectfully request this Honorable Court remand this case to the Circuit Court of Cook County, for attorneys fees incurred in having to present this motion, and for such additional relief as this Court deems reasonable and just.

Dated: August 14, 2008

Respectfully submitted,

/s/ Myles McGuire
Myles McGuire
One of the attorneys for Plaintiffs
individually and on behalf of a class of
similarly situated individuals

JAY EDELSON
MYLES MCGUIRE
STEVEN LEZELL
KAMBEREDELSON, LLC
53 West Jackson, Suite 550
Chicago, Illinois 60604
(312) 589-6370
Firm I.D. 44146