IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRETA BELSLY AND GEORGIA MATT, on behalf of themselves and all others similarly situated | ) ) ) ) |
| Plaintiffs, | ) ) ) No. 08 C 4170 |
| v. | ) ) Wayne R. Andersen |
| FUNMOBILE GAMES, INC. and FUNMOBILE, LTD., | ) District Judge ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Greta Belsly and Georgia Matt, on behalf of themselves and all others similarly situated move to remand this action to the Circuit Court of Cook County pursuant to 28 U.S.C. § 1447(c). For the reasons set forth below, Plaintiffs' motion is denied. However, if Plaintiffs are willing to stipulate that they will not accept more than $5 million in damages, the court may reconsider this motion.

## BACKGROUND

The case at hand is a class action lawsuit in which Plaintiffs, Greta Belsly and Georgia Matt, on behalf of themselves and all others similarly situated, allege that Defendants have unlawfully charged cellular telephone customers for products and services the customers have not authorized. Plaintiffs claim that this practice has resulted in Defendants unlawfully collecting money from consumers throughout the nation, and seek redress for all persons injured by this conduct. Plaintiffs' initial complaint was filed in the Circuit Court of Cook County on

June 23, 2008. On July 25, 2008, Defendants filed a timely Notice of Removal in this court pursuant to the Class Action Fairness Act ("CAFA") 28 U.S.C. §§ 1332, 1453. Plaintiffs then filed the instant Motion to Remand on August 14, 2008.

## STANDARD OF REVIEW

CAFA grants federal courts original jurisdiction over actions that involve: 1) minimal diversity; 2) 100 or more class members; and 3) an aggregate amount in controversy that exceeds $5 million. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005). Plaintiffs concede that Defendants have met the first two requirements of federal jurisdiction under CAFA. However, Plaintiffs argue that Defendants have failed to properly demonstrate that the amount in controversy exceeds $5 million.

The party seeking to invoke federal jurisdiction "has the burden of showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). When the dispute regarding federal jurisdiction involves whether the amount in controversy meets the minimum threshold, the Seventh Circuit has held that the "removing litigant must show a reasonable probability that the stakes exceed the minimum." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d at 449. "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Spivey v. Vertrue*, 528 F.3d 982, 986 (7th Cir. 2008).

## DISCUSSION

In support of Defendants' position that the amount in controversy exceeds $5 million, Defendants have submitted two affidavits from their Business Development Manager, Ed Yip.

The first affidavit states that Defendants earned $85.4 million in revenue from selling mobile content in the U.S. market in 2006 and 2007 alone. Mr. Yip's updated affidavit indicates that Defendants unaudited revenue figures through June 30, 2008 total $29.3 million. Furthermore, Mr. Yip's first affidavit indicates that Defendants had approximately 2,909,000 U.S. customers as of December 2007, and that many of the alleged unauthorized products that Defendants sell (ringtones, wallpapers, themes, jokes, and horoscopes) cost between $4.99 and $9.99 per purchase. Given the magnitude of Defendants' total sales, the number of U.S. customers that would potentially comprise the class, and the claims in Plaintiffs' Complaint that allege systematic and repeated unauthorized charges over a period of years, clearly placing a significant portion of Defendants' U.S. revenue in controversy, we are confident that the amount in controversy exceeds $5 million. Thus, Defendants have satisfied their burden of showing a reasonable probability that the stakes exceed $5 million.

Furthermore, Plaintiffs have failed to establish that it would be legally impossible for the recovery to exceed $5 million. Instead, Plaintiffs allege that in order for the amount in controversy to exceed $5 million Defendants must go so far as to present evidence showing approximately 6% of their revenue during 2006 and 2007 was the result of unauthorized charges. However, the Defendants cannot be required to admit to extensive unauthorized charges merely to avail themselves of their federal rights. The question facing this court is the amount that Plaintiffs have placed *in controversy* through their Complaint, not the amount of money that the Plaintiffs are actually entitled to recover. *Brill*, 427 F.3d at 449 (removing litigant "did not have to confess liability in order to show that the controversy exceeds the threshold."). Moreover, we do not agree with Plaintiffs claim that Defendants cannot use the language in the Complaint that

3

alleges systematic, repeated unauthorized charges over a period of years in order to ascertain the amount in controversy. Plaintiffs cannot make sweeping allegations (which Mr. Yip likely looked to in order to form the basis for his affidavit) and then essentially back away from these same allegations for temporary tactical legal advantage.

As a final matter, it appears as though Plaintiffs have sued the incorrect parties. Defendants state that Funmobile Games, Inc. and Funmobile, Ltd. do not actually engage in business in the United States, and have no actual revenue in the United States. (The updated affidavit of Mr. Yip indicates that the Defendants have actually earned *de minimus* amounts of revenue in the United States that totals approximately $31,500 between 2005 and 2008, but that the revenue is not derived from mobile content sold through subscription plans to U.S. subscribers. Therefore, this *de minimus* revenue does not change the fact that Plaintiffs have sued the incorrect parties, and does not effect the court's analysis.) Rather, Mobilefunster, Inc., a corporation that functions as part of the Funmobile group, is the entity that does business in the United States. Therefore, Plaintiffs' claim that, because Mr. Yip's initial affidavit stated that the current Defendants actually have no revenue in the United States, the amount in controversy is actually $0.00 – well under the $5 million threshold. However, Plaintiffs cannot use the fact that they sued the wrong party to evade federal jurisdiction. Furthermore, Defendants' Memorandum states that Defendants' counsel has already informed Plaintiffs' counsel that Defendants would consent to a motion to substitute Mobilefunster, Inc. as the correct defendant.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Remand [9] to the Circuit Court of Cook County pursuant to 28 U.S.C. § 1447(c) is denied.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: October 23, 2008